UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ZIMMER, INC. and            )
ZIMMER DENTAL, INC.,        )
                            )
            Plaintiffs      )
       v.                   )        Cause No. 3:09-CV-117 RM
                            )
SCOTT SHARPE and            )
SCOTT BEAUDEAN,             )
                            )
       DEFENDANTS           )

<u>OPINION AND ORDER</u>

Zimmer, Inc. and Zimmer Dental, Inc. brought this action against former employees Scott Sharpe and Scott Beaudean for breach of the non-disclosure, non-competition and non-solicitation employment agreements, threatened or actual misappropriation of trade secrets, breach of fiduciary duty, and breach of duty of loyalty, seeking both injunctive relief and monetary damages. In the May 15, 2009 order declining to transfer jurisdiction of this matter to the Eastern District of Louisiana, this court noted that the defendants raised the issue of whether Louisiana or Indiana law applies to enforceability of the restrictive covenants in their employment agreements. The court invited the parties to submit briefs on that issue and now finds that Indiana law applies.

I. BACKGROUND

For purposes of this opinion, the court assumes the reader's familiarity with its March 31, 2009 temporary restraining order and May 15, 2009 transfer of venue order and the background facts set forth in those opinions. The

employment agreements executed by Mr. Sharpe and Mr. Beaudean contain a choice of law provision stating that Indiana law shall govern construction and enforcement of the agreements, notwithstanding any states's choice-of-law rules to the contrary. (Employment Agreement, ¶ 14). The defendants argue that although Indiana generally enforces such contractual stipulations, Indiana's public policy exception to this general rule requires application of Louisiana law. The defendants reason that Louisiana's interest in this litigation is materially greater than Indiana's interest because Mr. Sharpe and Mr. Beaudean are and were citizens of Louisiana, they executed the agreements in Louisiana, most services and work contemplated by the agreements were performed in Louisiana, and the agreements restrict the defendants' employment in Louisiana. Further, Zimmer, Inc. and Zimmer Dental are Delaware corporations, and the only connection with Indiana is that Zimmer Inc.'s principal place of business is located here. The defendants conclude that Louisiana law should apply because the non-competition agreements Zimmer seeks to enforce violate a fundamental public policy of Louisiana.

Zimmer responds that Indiana has a materially greater interest in this litigation because Zimmer, Inc.—with whom Mr. Sharpe and Mr. Beaudean contracted—is located in Indiana, the employment agreements were administered out of and executed by Zimmer in Indiana, the defendants' stock options were granted from Indiana, the defendants' compensation was processed out of Indiana, and much of the relevant discovery and several witnesses are located in

Indiana. Zimmer further contends that Louisiana's interest in this litigation is minimal in light of the restricted scope of the non-competition and non-solicitation provisions and the clear, ongoing and admitted violations by the defendants of their employment agreements. Zimmer reasons that applying Louisiana law would undermine Indiana's long standing public policy of enforcing restrictive covenants that are reasonably limited.

## II. Discussion

A federal court sitting in diversity must apply the forum state's choice of law rules. *See* Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); *see also* S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist., 50 F.3d 476, 478 (7th Cir. 1995) ("[A] federal court sitting in diversity must first apply the forum state's choice of law rules, which may or may not select the forum state's substantive law to govern the dispute." (internal citations omitted)). This court therefore applies Indiana's choice of law rules to determine whether Indiana or Louisiana law governs the enforceability of the restrictive covenants.

### A. Genuine Conflict between Louisiana and Indiana law

Before addressing choice of law principles, the court first considers whether there is a genuine conflict between Louisiana and Indiana law. If not, it isn't necessary to address choice of law. Allen v. Great America Reserve Ins. Co., 766 N.E.2d 1157, 1162 (Ind. 2002) ("Ordinarily a choice of law issue will be resolved

only if it appears there is a difference in the laws of the potentially applicable jurisdictions."). There is a conflict between Louisiana and Indiana law.

Indiana and Louisiana law both generally disfavor non-competition provisions and strictly construe such provisions against the employer. *See* Central Indiana Podiatry, P.C. v. Krueger, 882 N.E.2d 723, 728-729 (Ind. 2008); SWAT 24 Shreveport Bossier, Inc., 759 So. 2d 1047, 1049 (La. App. 2 Cir. 2000), *aff'd by*, 808 So. 2d 294 (La. 2001). The two states diverge sharply on the test they apply in determining whether the agreements are enforceable. Indiana applies a reasonableness test. Gleeson v. Preferred Sourcing, LLC, 883 N.E.2d 164, 172 (Ind. Ct. App. 2008). Louisiana requires that the provisions contain narrowly drawn criteria as outlined in Louisiana Revised Statute § 23:921(C). *See* Restivo v. Hanger Prosthetics & Orthotics, Inc., No. 06-32, 2007 WL 1341506, at *4 (E.D. La. May 4, 2007) (noting that Louisiana takes a technical approach to determining validity of non-compete agreement).

Under Indiana law, "[c]ovenants must be reasonable with respect to the legitimate interests of the employer, restrictions on the employee, and the public interest." Gleeson v. Preferred Sourcing, 883 N.E.2d at 172.

> To be enforceable, a noncompetition agreement must be reasonable. . . . In arguing the reasonableness of a non-competition agreement, the employer must first show that it has a legitimate interest to be protected by the agreement. The employer also bears the burden of establishing that the agreement is reasonable in scope as to the time, activity, and geographic area restricted.

Central Indiana Podiatry v. Krueger, 882 N.E.2d at 729 (internal citations omitted). "The employer bears the burden of showing that the covenant is reasonable and necessary in light of the circumstances[,] . . . [meaning that] the employer must demonstrate that the employee has gained a unique competitive advantage or ability to harm the employer before such employer is entitled to the protection of a noncompetition agreement." Gleeson v. Preferred Sourcing, 883 N.E.2d at 172-173 (internal citations omitted). Under the "blue pencil" doctrine, if a covenant is clearly separated into parts, and if some parts are reasonable and others are not, the contract may be severed so that the reasonable portions may be enforced. Licocci v. Cardinal Assoc., Inc., 445 N.E.2d 556, 561 (Ind. 1983); Central Indiana Podiatry v. Krueger, 882 N.E. 2d at 730. Efforts to save a covenant are limited to applying terms that already exist in the contract; the court will not add terms. Id.

This court has already made a preliminary finding in its March 31, 2009 temporary restraining order that the covenants are reasonable under Indiana law. For a further discussion of the application of Indiana law to the employment agreements, see this court's previous order (document # 16).

In Louisiana, non-competition and non-solicitation of customer provisions "will be enforced only if [they] meet[] narrowly drawn criteria." SWAT 24 Shreveport Bossier, Inc. v. Bond, 759 So. 2d 1047, 1049 (La. App. 2 Cir. 2000), aff'd by, 808 So. 2d 294 (La. 2001) (citations omitted). Louisiana Revised Statute § 23:921(A) states that "[e]very contract or agreement, or provision thereof, by

which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void." LA. REV. STAT. § 23:921(A). Louisiana Revised Statute § 23:921(C) then provides the terms under which restrictive covenants are permissible:

> Any person . . . who is employed . . . may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within *a specified parish or parishes, municipality or municipalities, or parts thereof*, so long as the employer carriers on a like business therein, not to exceed a period of two years from termination of employment. . . .

LA. REV. STAT. § 23:921(C) (emphasis added). The defendants' employment agreements contain several provisions that generally prevent the defendants from working for or assisting a competing organization in the same or similar capacity in a restricted geographic area (non-competition provision), from soliciting Zimmer customers or potential customers (non-solicitation of customers provision), from soliciting Zimmer employees or former employees (non-solicitation of employees provision), and from disclosing Zimmer's confidential information (non-disclosure provision). Louisiana Revised Statute § 23:921(C) applies to the non-competetion and non-solicitation of customers provisions, *see* L & B Transport, LLC v. Beech, No. 07-146, 568 F. Supp. 2d 689, 692 (M.D. La. July 22, 2008), but not to the non-solicitation of employees or non-disclosure provisions. Frederic v. Hladky, No. 00-0481, 2000 WL 805233, at *5 (E.D. La. 2000) (*citing* Smith, Barney, Harris Upham & Co. v. Robinson, 12 F.3d 515 (5th Cir.1994)) (stating that provisions prohibiting the defendants from soliciting the former employer's employees are not

governed by the statute); *see also* <u>CDI Corp. v. Hough</u>, 9 So.3d 282, 292 (La. App. 1 Cir. 2009) (same);[1] <u>Engineered Mech. Services, Inc. v. Langlois</u>, 464 So.2d 329, 334, n. 15 (La. App. 1 Cir. 1984) ("Confidentiality agreements have been held enforceable and not subject to the prohibition (and requirements) of LA. R.S. 23:921.") (citation omitted); *see also* <u>Walker v. Louisiana Health Mgmt. Co.</u>, 666 So.2d 415, 427 n. 14 (La. App. 1 Cir. 1995) (same).[2]

The defendants contend that the non-competition and non-solicitation of customer provisions in the employment agreements are invalid because they don't specifically list parishes or municipalities. The agreements contain several non-competition and non-solicitation provisions, some that contain no geographical limitation and others that are limited by the following "Restricted Geographic Area": "the territory or state in which the Employee was responsible for cultivating or maintaining competitive advantages on [Zimmer's] behalf, {during the last two years of Employee's employment with Company}."[3] (Employment Agreement, ¶ 8(A)(5)). The agreements also contain a severability provision, which provides, in relevant part:

---

[1] "[A]n agreement not to solicit employees of a former employer does not interfere with the exercise of a lawful trade or business unless that recruiting is an indispensable ingredient of the former employee's new profession." <u>Frederic v. Hladky</u>, 2000 WL 805233, at *5. The non-solicitation of employee provision "is subject only to general contract requirements." <u>Id.</u>

[2] "[A]n agreement not to use confidential information is enforceable if . . . the information used is in fact confidential." <u>Millet v. Crump</u>, 687 So. 2d 132, 135 (La. App. 5 Cir. 1997)(internal quotations and citation omitted).

[3] Mr. Beaudean's agreement doesn't contain this last clause.

> The covenants and restrictions in this Agreement are separate and divisible . . . . If any particular covenant, provision or clause of this Agreement is determined to be unreasonable or unenforceable for any reason, including . . . geographic area covered by any non-competition, non-solicitation . . . provision, or clause, Company and Employee acknowledge and agree that such covenant, provision, or clause shall automatically be deemed reformed such that the contested covenant, provision or clause will have the closest effect permitted by applicable law to the original form and shall be given effect and enforced as so reformed to whatever extent would be reasonable and enforceable under applicable law. . . .

(Employment Agreement, ¶ 11).

Although there is some disagreement amongst the circuits in Louisiana, most courts find that "noncompetition agreements are not enforceable unless the geographical limitations are set forth in the agreement, as required by LA. R.S. 23:921(C)." SWAT 24 Shreveport v. Bond, 759 So. 2d at 1050 (citations omitted). These courts require that the non-compete agreement "specifically name the parishes or municipalities in which the agreement is to have effect." Vartech Sys., Inc. v. Hayden, 951 So. 2d 247, 258 (La. App. 1 Cir. 2006); see Restivo v. Hanger Prosthetics & Orthotics, 2007 WL 1341506, at *4 (finding that "Louisiana law does require that parishes intended to fall within the geographical restriction be specifically identified in order for a non-compete agreement to be valid.") (citing several cases). "[G]eneral reference in the agreement to whatever parishes, counties or municipalities the Company conducted business d[oes] not comply with the statute." Bell v. Rimkus Consulting Group, Inc. of Louisiana, 983 So. 2d 927, 933 (La. App. 5 Cir. 2008).

It is irrelevant whether the employee possessed enough information to allow him to determine the areas prohibited in the non-competition agreement; the statute doesn't contemplate such action on the employee's part. Bell v. Rimkus Consulting Group, 983 So. 2d at 934. "Rather, the statute requires that the parishes or municipalities be specified as an objective measure of the agreement's validity and for the employee to know and understand the limitations upon the signing of the agreement." Id. (citations omitted); but see Petroleum Helicopters, Inc. v. Untereker, 731 So.2d 965, 968 (La. App. 3 Cir. 1999) (holding that a non-competition agreement prohibiting employee from "carrying on or engaging in a similar business, and refrain[ing] from soliciting customers . . . within the parishes in which [the employer] carries on a like business" was valid) and Monumental Life Ins. Co. v. Landry, 846 So. 2d 798, 801 (La. App. 3 Cir. 2003) ("This circuit has held that the failure to identify each parish by name does not automatically nullify the agreement; rather, its validity depends on whether the area is 'identifiable.'").

In the event portions of the non-competition agreement are null and void, a court may apply the severability clause to sever offending portions. SWAT 24 Shreveport Bossier, Inc. v. Bond, 808 So. 2d 294, 308-309 (La. 2001) (noting that where the geographical limitation is over broad, the court may strike the offending language). In SWAT 24 v. Bond, the court found that the agreement's language made it "possible to excise the offending language from the noncompetition clause without doing undue damage to the remainder of the provision." 808 So. 2d at

309. In <u>AMCOM of Louisiana, Inc. v. Battson</u>, 670 So. 2d 1223, 1229 (La. App. 2d Cir. 1996), *rev'd by*, 670 So. 2d 1223 (La. 1996), the agreement specified that the employee would not compete with his former employer "in Shreveport or Bossier City, Louisiana, or in Caddo or Bossier Parishes, Louisiana, or within a seventy-five (75) mile radius of Shreveport or Bossier City, Louisiana." Because the agreement contained a severability clause, the trial court struck the language regarding the seventy-five mile radius, but enforced the restriction in Shreveport and Bossier City and Caddo and Bossier Parishes. <u>Id.</u> at 1228-1229. On appeal, the second circuit agreed the language was over broad, but refused to enforce any portion of the agreement, declining to "rewrite" the overly broad language. <u>Id.</u> at 1229. The Louisiana Supreme Court granted the employer's writ, ordered reversal of the court of appeals' judgment and reinstated the trial court's judgment. <u>AMCOM of Louisiana, Inc. v. Battson</u>, 670 So. 2d 1223 (La. 1996). In <u>SWAT 24 v. Bond</u>, the court stated: "As pointed out by the judge dissenting from the second circuit's opinion [in <u>AMCOM</u>], the severability clause did not require a court to reform, redraft, or create a new agreement. It required only that the offending portion of the agreement be severed." 808 So. 2d at 309. *See also* <u>Vartech Sys. v. Hayden</u>, 951 So. 2d at 258, n. 14 (noting that a saving clause in the non-competition agreement could be used to strike portions of the non-compete clause that are overly broad).

Courts have declined requests to reform the agreement when the request requires them to rewrite the terms of the parties' agreement. In <u>L & B Transport</u>

v. Beech, 568 F. Supp. 2d at 692, the non-compete agreement prohibited the employee from soliciting any customers of the employer in Alabama. The employer argued that because the employment agreement also contained a severability clause, the court could reform the non-compete provision to comply with Louisiana law. Id. Similar to the severability clause in this case, the agreement provided that "[i]f a Court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid or enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited." Id. at 692, n. 17. The court noted that the third and fourth circuits had enforced non-competition agreements that didn't specify by name the parishes or municipality included in the geographic limitation under the doctrine of reformation. Id. at 693 (citing Petroleum Helicopters, Inc. v. Untereker, 731 So. 2d 965, 968 (La. App. 3 Cir. 1999); Dixie Parking Serv., Inc. v. Hargrove, 691 So. 2d 1316, 1318 (La. App. 4 Cir. 1997)). The majority of Louisiana courts, though, "decline to save invalid non-competition provisions through reformation." Id. (citing cases). Applying Louisiana's statutes and jurisprudence, the L & B Transport v. Beech court declined to reform the employment agreement to comply with Louisiana law even though the agreement contained a severability clause. Id. at 697-698.

Courts reason that if they reform invalid non-competition provisions by rewriting the contract provisions, "employers would be free to routinely present employees with grossly overbroad covenants not to compete," Team Envtl. Servs.,

Inc. v. Addison, 2 F.3d at 124 , 127 (5th Cir. 1993) (applying Louisiana law), and that rewriting such provisions would "place courts in the business of either saving or writing a contract that is not generally favored by law." Gearheard v. De Puy Orthopaedics, Inc., 1999 WL 638582, at *6 (E.D. La. Aug. 19, 1999). "While a strict interpretation of the statute can be criticized as being overly technical, such a reading is consistent with Louisiana's strong public policy prohibiting covenants not to compete." Restivo v. Hanger v. Prosthetics & Orthotics, 2007 WL 1341506, at *4 (E.D. La. 2007).

Because the employment agreements in this case don't specifically name parishes or municipalities, they are presumptively invalid under Section 23:921. The court might sever invalid portions of a non-competition agreement and uphold the remaining provisions, *see* SWAT 24 v. Bond, 808 So. 2d at 309 and AMCOM v. Battson, 670 So. 2d 1223, but Louisiana courts disagree about whether a court can actually rewrite the parties' agreement to comply with Section 23:931. The decision in L & B Transport v. Beech persuades the court that despite the broad severability clause, the Louisiana Supreme Court would likely decline to rewrite the Zimmer agreements to comply with Section 23:921. It is Louisiana's policy to strictly construe such provisions in the employee's, not the employer's, favor.

Because of the differences in Louisiana and Indiana law, there is a genuine conflict in the laws of the two states that would likely affect the courts' resolution of this matter.

*B. Choice of Law - Public Policy Considerations*

Indiana choice of law doctrine generally favors contractual stipulations as to governing law. Allen v. Great Am. Reserve, 766 N.E.2d at 1162. Indiana recognizes a public policy exception to this general rule, s*ee* Schaffert v. Jackson Nat'l Life Ins. Co., 687 N.E.2d 230, 234 (Ind. Ct. App. 1997), and has applied the public policy exception when deciding if Indiana public policy forbids the application of another state's law. The "public policy exception is very narrow." Alli v. Eli Lilly and Co., 854 N.E.2d 372, 379 (Ind. Ct. App. 2006). The court in Alli v. Eli Lilly explained: "[t]o justify disregard of another state's laws on public policy grounds, that state's laws 'must appear to be against good morals or natural justice or prejudicial to the general interests of the citizens of this State.'" Id. at 379-380 (*quoting* Maroon v. State, Dep't of Mental Health, 411 N.E.2d 404, 411 (Ind. Ct. App.1980). Public policy may overcome a choice-of-law provision if Indiana has clearly prohibited it, as it has under its franchise statute. Wright-Moore Corp. v. Ricoh Corp., 908 F.2d 128, 132 (7th Cir. 1990) (Indiana franchisee could not waive statutory rights through agreement to apply New York law).

The exception doesn't apply simply because Indiana law would change the case's outcome. Schaffert v. Jackson Nat'l Life, 687 N.E.2d at 234. In Schaffert v. Jackson Nat'l, the plaintiffs argued that applying Illinois choice of law would violate Indiana's public policy because Indiana law allowed recovery of death benefits, while Illinois law did not. Id. The court disagreed, explaining:

Our own scheme of legislation may be different. We may even have no legislation on the subject. That is not enough to show that public policy forbids us to enforce the foreign right.... We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home.

Id. (*quoting* Loucks v. Standard Oil Co. of New York, 120 N.E. 198, 201 (N.Y. 1918)). The plaintiffs didn't argue that Illinois law was immoral or against natural justice and therefore "[t]heir contention that [the court] should decline to apply Illinois law merely because the result would be different under Indiana law would extend the doctrine far beyond the limits recognized . . ." Id.

"Indiana law on the public policy exception to choice of law provisions in contracts appears to be consistent with the more detailed guidance available from Section 187 of the Restatement (Second) of Conflicts of Law." Dearborn v. Everett J. Prescott, Inc., 486 F. Supp. 2d 802, 812 (S.D. Ind. 2007) (applying Indiana law). Section187 states in relevant part:

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 187. The comments to § 187 further explain the public exception doctrine:

The chosen law should not be applied without regard for the interests of the state which would be the state of the applicable law with respect to the particular issue involved in the absence of an effective choice by the parties. The forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law. Application of the chosen law will be refused only (1) to protect a fundamental policy of the state which, under the rule of § 188, would be the state of the otherwise applicable law, provided (2) that this state has a materially greater interest than the state of the chosen law in the determination of the particular issue. . . .

To be "fundamental," a policy must in any event be a substantial one. . . . [A] policy of this sort will rarely be found in a requirement, such as the statute of frauds, that relates to formalities . . . On the other hand, a fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power. . . .

RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 187 cmt. g. When determining if a contract is contrary to public policy, "Indiana courts look for a clear manifestation of public policy, a tendency to injure the public, or contracts 'against the public good' or 'inconsistent with sound policy and good morals.'" Dearborn v. Everett J. Prescott, 486 F. Supp. 2d at 814 (*citing* Straub v. B.M.T. by Todd, 645 N.E.2d 597, 599 (Ind. 1994)).

Under § 187(2)(a), Indiana has a sufficiently close relationship to these parties and the contract to make the parties' choice of law reasonable. As already noted, Zimmer, Inc. is located in Indiana, the employment agreements were administered out of and executed by Zimmer in Indiana, the defendants' stock options were granted from Indiana and the defendants' compensation was processed out of Indiana. *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 187

cmt. f. (noting that the state of the chosen law has some substantial relationship to the parties or the contract if "one of the parties is domiciled or has his principal place of business" there). These connections with Indiana suffice to establish a reasonable basis for the parties' choice of law provision. The court therefore turns to the public policy exception found in § 187(2)(b).

The parties appear to concede that under § 188 of the Restatement, Louisiana law would apply in the absence of a choice of law provision. When making this determination, the court must decide which state has the most significant relationship to the transaction by considering the following: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 188; *see also* <u>Nautilus Ins. Co. v. Reuter</u>, 537 F.3d 733, 737 (7th Cir. 2008) (applying and evaluating the § 188 factors under Indiana choice of law rules).

Neither the place of contracting nor the place of negotiation is determinative because these parties executed the employment agreements in their respective states and the record provides scant evidence to indicate where the negotiations took place. The remaining factors suggest a greater connection to Louisiana. The defendants live in Louisiana and the contract was performed in Louisiana. Zimmer, Inc. is located in Indiana and Zimmer Dental is located in California, but they do business in Louisiana. Both companies are incorporated in Delaware. As

16

noted, the defendants' stock options were granted from Indiana and the defendants' compensation was processed out of Indiana. The events giving rise to this suit took place in Louisiana and Zimmer is trying to prevent Louisiana citizens from working in an area that primarily includes Louisiana. Based on these facts, Louisiana law has the most significant relationship to the transaction and parties and would apply in the absence of a choice of law provision.

Because a choice of law provision calls for application of Indiana law, the court must decide whether that provision should be disregarded "(1) to protect a fundamental policy of [Louisiana], . . . provided (2) that [Louisiana] has a materially greater interest than [Indiana] . . . in the determination of the particular issue." RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 187 cmt. g. Having just discussed Louisiana's interest in this litigation, the court first determines if Louisiana has a materially greater interest than Indiana as to the enforcement of the non-competition and non-solicitation restrictions.

The defendants note that the court in its June 15, 2009 order stated that "Louisiana has a greater interest in the outcome of this litigation. *See e.g.*, DePuy Orthopaedics v. Gault South Bay, No. 3:07-CV-425, 2007 WL 347662, at *11 (N.D. Ind. Nov. 13, 2007)." The court, quoting DePuy Orthopaedics v. Gault South Bay, stated that Louisiana "citizens are more closely related to and interested in the dispute as [Zimmer] seeks to restrict [Louisiana] resident[s] from pursuing [their] livelihood in the state of [Louisiana]. Most of the material events giving rise to [Zimmer's] claims occurred in [Louisiana] and concern [Louisiana] residents."

17

(document # 34, p. 16). The court concluded that "Louisiana's interest in resolving this dispute outweighs Indiana's interest in enforcing an Indiana company's contractual obligations." (document # 34, p. 16).

As Zimmer points out, though, the court didn't decide whether Louisiana's interest is "materially" greater than Indiana's interest for purposes of choice of law. In <u>Dearborn v. Everett J. Prescott</u>, 486 F. Supp. 2d at 804-805, the court addressed the public policy exception when deciding whether to apply Maine law, as stated in the choice of law provision, or Indiana law to the enforcement of a non-competition agreement. Dearborn, a resident of Indiana, entered into a non-competition agreement with EJP, a Maine corporation, for employment in Indiana. <u>Id.</u> In finding that Indiana had a materially greater interest, the court stated:

> Dearborn is an Indiana resident, and his ability to work here in his chosen field is at issue. Indiana was the center of gravity of his employment relationship with EJP throughout the ten years he worked for EJP. All his positions were in Indiana. He visited Maine only occasionally . . . . Dearborn's supervisor with EJP is also located in Indiana. Indiana is the site of the activity that EJP seeks to enjoin. . . . On the other side of the equation, EJP is headquartered in Maine and presumably would benefit there from enforcement of the covenants. On balance, Indiana has a materially greater interest in this litigation than Maine . . . .

<u>Id.</u> at 818. *See also* <u>Wright-Moore v. Richo</u>, 908 F.2d at 133 (finding that Indiana had a materially greater interest in the litigation than New York because the franchisee was incorporated and located in Indiana, its witnesses and documents were there, the contract negotiations occurred in Indiana, and the contract was,

in part, performed in Indiana; New York's only connection was that the defendant was incorporated there).

As already noted, Indiana has an interest in this litigation; in fact, much of the relevant discovery and several witnesses are located in Indiana. Still, similar to Dearborn v. Everett J. Prescott, Louisiana — which is the employees' state of residence and state of former and current employment — has a materially greater interest in determining the enforcement of Zimmer's restrictive covenants. The remaining question is whether application of Indiana law would be contrary to a fundamental public policy of Louisiana.

Zimmer correctly notes that Indiana hasn't applied the public policy exception to invalidate an Indiana choice of law provision based on another state's public policy. Section 187, however, applies even when the forum state is required to analyze another state's public policy. The court in Great Frame Up Sys., Inc. v. Jazayeri Enter., Inc., 789 F. Supp. 253 (N.D. Ill. 1992), addressed this issue when analyzing Illinois choice of law. The court stated:

> Most, if not all, Illinois cases encounter the choice-of-law issue under section 187 only in situations where Illinois public policy needs to be analyzed to determine whether the choice of some other state's law should be overridden. . . . The analysis under section 187(2)(b) should not depend on whether the court is faced with a fundamental public policy of the forum state or of some other state.

Id. at 255, n. 1. *See also* Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d 376, 389-391 (7th Cir. 2003) (finding that pursuant to the public policy exception found in § 187 of the Restatement, Maine law, instead of the contractually

stipulated choice of Illinois law, applied to the enforcement of a franchise agreement). This court agrees with <u>Great Frame Up v. Jazayeri Enter.</u> that application of § 187(2)(b) doesn't depend on whether the public policy at issue is that of the forum state or some other state.

"Louisiana has long had a strong public policy disfavoring noncompetition agreements between employers and employees." <u>SWAT 24 v. Bond</u>, 808 So. 2d 294, 298 (La. 2001) (citations omitted). "[T]he longstanding public policy of Louisiana has been to prohibit or severely restrict such agreements." <u>Id.</u> Louisiana's public policy disfavoring these types of agreements is "based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." <u>SWAT 24 v. Bond</u>, 808 So. 2d at 298. As a result, "[s]uch a covenant will be enforced only if it meets narrowly drawn criteria." <u>SWAT 24 v. Bond</u>, 759 So. 2d 1047, 1049 (La. App. 2. Cir. 2000) (citations omitted). In fact, "[w]hen a contract containing a covenant not to compete is stipulated to be governed by the law of a state that would validate the covenant, Louisiana courts have not hesitated in striking down the stipulation as ineffective if Louisiana law was otherwise applicable." <u>Gearhead v. De Puy Orthopaedics</u>, 1999 WL 638582, *3 (E.D. La. 1999) (citations omitted).

In <u>Aon Risk Serv. of Louisiana, Inc. v. Ryan</u>, 807 So. 2d 1058, 1062 (La. App. 4 Cir. 2002), the court explained the reasoning for requiring the employer to

specifically state the parishes, counties, and municipalities covered by the restrictive covenants:

> [This requirement] avoids putting the employee, who may be presumed more often than not to be at a financial disadvantage relative to his employer to the further disadvantage of having to engage in expensive litigation in order to determine what the precise geographic limits of the agreement are. We believe that the legislature intended that the employee know on the front end what his potential restrictions might be and exactly what price he was being called upon to pay in exchange for employment. By specifying the parishes, etc. and requiring that the employer be doing business in them, the employee is not later caught in a position where he finds that he has given up much more than he bargained should his employer greatly expand the geographic range of his business after the agreement is executed.

Id. (finding that the geographic scope of "whatever parishes, counties and municipalities" the employer carried on business was invalid).

The question, then, is whether applying Indiana law would contravene this fundamental policy of Louisiana. Stated differently, would application of Indiana law "be against good morals or natural justice or prejudicial to the general interests of the citizens of [Louisiana]." *See* Alli v. Eli Lilly, 854 N.E.2d at 379-380 (citations omitted). The exception doesn't apply merely because Indiana law would change the outcome of the case. Schaffert v. Jackson Nat'l Life, 687 N.E.2d at 234.

Indiana, like Louisiana, starts from the premise that such non-competition and non-solicitation agreements generally are against public policy; Indiana has repeatedly required that covenants not to compete be sufficiently specific in scope to allow the employee "a clear understanding of what conduct is prohibited." Cohoon v. Fin. Plans & Strategies, Inc., 760 N.E.2d 190, 195 (Ind. Ct. App. 2001)

(citation omitted). Indiana law requires that the scope of the non-compete, non-solicitation provision be reasonable in terms of the time, activity, and geographic area restricted. Central Indiana Podiatry v. Krueger, 882 N.E. 2d at 730. Although Indiana courts will use the blue-pencil doctrine to sever unreasonable portions of a non-competition, non-solicitation agreement, "such efforts . . . are limited to applying terms that already exist in the contract; the court may not add terms." Dearborn v. Everett J. Prescott, 486 F. Supp. 2d at 810 (citations omitted). "[T]his policy gives an unhappy and restless employee an opportunity to know the terms that actually bind him. He is not required to leave the old employer and burn his bridges, and only then find out whether he can take his new job." Id. at 815-816. Indiana law, which requires that non-competition agreements contain reasonable restrictions that can be found within the agreement, doesn't offend Louisiana's fundamental public policy, isn't against good morals or natural justice, and isn't prejudicial to the general interests of the citizens of Louisiana.

Although Louisiana requires non-competition agreements to list the specific parishes and municipalities covered by the restrictions, courts can strike overly broad and invalid geographical limitations from such agreements while upholding the remaining valid limitations. Further, Louisiana courts disagree on the application of § 23:921; as noted, two circuits have indicated that the failure to identify each parish by name doesn't automatically nullify the agreement and such agreements may be saved by reformation. Given Louisiana Supreme Court's willingness to reform non-competition agreements by striking invalid provisions

22

and given the disagreement in the appellate courts on the application of § 23:921 to geographical limitations, this court can't say that application of Indiana law would offend Louisiana's fundamental public policy with respect to non-competition agreements. That application of Louisiana law will likely change the outcome in this case isn't enough to disregard the choice of law provision under the public policy exception. Schaffert v. Jackson Nat'l Life, 687 N.E.2d at 234 (Ind. Ct. App.1997); *see also* Vencor, Inc. v. Webb, 33 F.3d 840, 845 (7th Cir. 1994) ("[T]here is a long way between, on the one hand, finding a covenant unenforceable and, on the other hand, declaring that its enforcement is so odious that a court will not respect the parties' election to be governed by the law of a state that would.").

Enforcement of the choice of law provision in the employment agreements protects the parties' justified expectations and furthers the goals of certainty, predictability, and ease in the determination and application of the law to be applied. *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 187 cmt. e. ("Prime objectives of contract law are to protect the justified expectation of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract. . . ."); *see also* Eck v. Assoc., Inc. v. Alusuisse Flexible Packaging, Inc., 700 N.E.2d 1163, 1167 (Ind. Ct. App. 1998) ("Indiana courts have long recognized and respected the freedom to contract[;] . . . it is in the best interest of the public not to unnecessarily restrict peoples' freedom of

contract."). The court finds that these factors further weigh in favor of applying Indiana law.

III. Conclusion

Based on the foregoing, the court finds that Indiana law applies to the enforcement of the defendants' employment agreements.

SO ORDERED.

ENTERED: _ August 4, 2009 _

_____ /s/ Robert L. Miller, Jr. _____
Chief Judge
United States District Court